HOUSTON BELT & TERMINAL RY. CO. et al. v. WOODS.†

(Court of Civil Appeals of Texas. Galveston. May 30, 1912. On Rehearing, June 20, 1912.)

1. MASTER AND SERVANT (§ 107*)—INJURIES TO SERVANT—APPLIANCES.

A railroad company which uses oil for fuel is guilty of negligence in furnishing its servants open flame lanterns to use around the reservoirs, where light is necessary to enable them to fill the engine tanks.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.*]

2. MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT—QUESTIONS FOR JURY.

In an action for the death of a railroad employé killed by an explosion of oil which he was running into an engine, held that, under the evidence, it was a question for the jury whether the company's rules forbidding the use of lanterns had been abrogated by habitual disregard with knowledge of those servants authorized to enforce the rules, so as to relieve decedent of the charge of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

3. MASTER AND SERVANT (§ 144*)—RULES—ABANDONMENT.

The rule of a master may be waived by habitual disregard of it with the knowledge and acquiescence of servants given the power and authority to enforce it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 287; Dec. Dig. § 144.*]

4. APPEAL AND ERROR (§ 1033*)—REVIEW—HARMLESS ERROR.

In an action against a railroad company for the death of plaintiff's husband, who was killed by an explosion of oil which he was running into an engine tank, an instruction which required the master's rules to be unreasonable before they could be abrogated by habitual disregard with knowledge of servants having authority to enforce them cannot be complained of by the defendant; the habitual disregard being sufficient to abrogate the rules.

[Ed. Note.—For other cases, see Appeal and Error. Cent. Dig. §§ 4052–4062; Dec. Dig. § 1033.*]

5. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

In an action for the death of an employé of a railroad company who was killed by an explosion of oil which he was running into an engine, an instruction that if defendant had made a rule forbidding deceased and employés similarly serving from using their lights as he was using his lantern, and if that requirement had been habitually violated. and was unreasonable as applied to the work, then deceased's failure to comply with the rule would not render him guilty of contributory negligence, was not on the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

6. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—QUESTIONS FOR JURY.

In an action against a railroad company for the death of an employé who was killed by an explosion of oil with which he was filling an engine, evidence held sufficient to warrant a submission to the jury of the question whether lights were necessary for the filling of the engine.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033. 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

7. NEGLIGENCE (§ 101*)—INJURIES TO SERVANT—COMPARATIVE NEGLIGENCE.

In an action for the death of a railroad employé who was killed by an explosion of oil which he was running into an engine while he had his lantern nearby, the employé's contributory negligence, if any, did not break the causal connection between the injury and defendant's negligence, which consisted in its failure to provide its employés with an adequate lighting system, the contributory negligence of the employé only diminishing his right to recover damages since the adoption act of April 13, 1909, instead of barring his right of recovery as at common law.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 85, 163, 164, 167; Dec. Dig. § 101.*]

Error from District Court, Harris County; Norman G. Kittrell, Judge.

Action by Rosa Woods against the Houston Belt & Terminal Railway Company and another. There was a judgment for plaintiff, and defendants bring error. Affirmed.

Andrews, Ball & Streetman and A. L. Jackson, all of Houston, for plaintiffs in error. John Lovejoy and Presley K. Ewing, both of Houston, for defendant in error.

McMEANS, J. This is an action by Rosa Woods, hereinafter called plaintiff, against the plaintiff in error, Houston Belt & Terminal Railway Company, a railroad corporation operating its railroad in this state, hereinafter called defendant, and the St. Louis, Brownsville & Mexico Railway Company, to recover damages for injuries resulting in the death of her husband, John Woods, while in the employment of defendant in the capacity of boiler washer, but at the particular

---

time of his injuries from which death resulted was engaged in giving oil to an engine tank under the orders of a superior.

Plaintiff alleged, in substance, that John Woods, at the time of the injuries complained of, was serving defendants in the capacity of a boiler washer in and around the roundhouse of defendants in Houston, and under the immediate personal supervision, control, and direction of defendant's officers and superior employés, and was commanded by one of such superiors to fill with oil one of defendant's engines, and that, in obedience to said command, he proceeded to do so in the usual and customary manner of the conduct of the business of defendants, and in the only manner available to him; that in filling said engine with oil it was necessary for him to go on the tank of the engine, and take with him his lantern so as to enable him to see the hole into which the oil was to run, and when the tank was sufficiently full, and to give the signals for proper location of such holes with respect to the pipe through which the oil was to be conducted; and, after ascertaining the position of said oil hole, and causing it to be properly located by the usual signals in such case with respect to said oil pipe, he placed his lantern down several feet away, and proceeded to run the oil into said engine in the ordinary and usual manner of such service in the business of the defendants, and each of them so far as he knew or had reason to believe; but, after said oil had run in for a few minutes, the gas therefrom took fire from the flame in said lantern, which was so constructed as to admit of that result, whereupon he was instantly enveloped in smoke and flame, and by the explosion blown into the air, and thereby so injured that he afterwards died. Plaintiff further alleged that it was practicable for defendants, and they had the opportunity, and in the exercise of ordinary care ought, to have furnished electrical lights or lighting for the work in question, or other lights which would not admit of the flame thereof being imparted to the escaping gas, and that such lights were necessary in order to be sufficiently or reasonably safe for such work, but that defendants furnished only such lights as John Woods was using at the time, and which were liable to ignite such oil and do serious injury to him, and were insufficient and not reasonably safe for the work, and that thereby defendants were negligent toward him. Plaintiff further alleges that said John Woods had on other occasions been required, in the absence of regular employés therefor, to fill engine tanks at night with oil which he had done similarly to the manner in which he was acting on the occasion in question by placing the lantern, as he did on said occasion, several feet away from the oil hole, say a full arm's length, all without objection, and with the knowledge and acquiescence of defendants' said foreman, and with no instruction as to the particular danger and how to avoid it, or other adequate direction; that said John Woods was inexperienced in such work, of which defendants knew, or were chargeable with notice, so that he was ignorant of the particular danger, and that such danger was not obvious to a person of average intelligence of his experience, and the defendant, in failing to give said John Woods instruction or warning that was reasonably sufficient to enable him, as a man of ordinary intelligence, to understand such danger, were negligent towards him, and that, in commanding and directing him to do said work at the time, place, and under the circumstances as done, were negligent towards him. Plaintiff further alleged that the danger was not so obvious or apparent that an ordinarily prudent man with such experience and knowledge as he had would have disobeyed or declined and suffered discharge, and that, notwithstanding said lights were not reasonably safe, a person of ordinary care would have continued in the employment with knowledge of such defect and danger, and that defendants knew of such defect, and the superiors intrusted with authority to remedy such defect knew thereof within a reasonable time before such injuries; that said negligent acts and omissions of defendants proximately caused the aforesaid injuries and death of the said John Woods.

Defendant answered by general denial and special pleas of assumed risk and contributory negligence of the deceased. The plaintiff dismissed as to the St. Louis, Brownsville & Mexico Railway Company.

The trial before a jury resulted in a verdict and judgment for plaintiff for $3,500, from which defendant has appealed. The mother and stepfather of the deceased were parties plaintiff, but as to them a judgment on an instructed verdict was rendered for defendant.

### Findings of Fact.

At the time John Woods received the injuries which resulted in his death he was in the employment of defendant in the capacity of boiler washer, but when so required by the servants of defendant, who were his superiors, it was also a part of his duty to assist in filling the locomotive tanks with fuel oil. His duties were performed in the nighttime. The oil with which the locomotive or engine tanks were filled was contained in a large reservoir or tank, situated conveniently near the railroad track, and the oil was taken from the latter and into the tank of an engine by means of a pipe or spout through which it flowed. The reservoir being stationary, and the pipe or spout being practically so, it was necessary to place the engine tank in such juxtaposition to the reservoir as that the pipe through which the oil flows could be placed into the

opening in the engine tank, commonly called the "manhole," and, when this has been done, a valve is opened and the oil passes into the tank. In order to place the engine tank in a proper place to so receive the oil, it is necessary to signal the hostler operating the engine to which the tank is an adjunct when and where to stop and place the tank, and in the nighttime these signals are made by a lighted lantern furnished by the defendant to its employés, such as John Woods was, for the purpose; and without such use of a lantern, or light of some kind, the tank could not be properly placed or "spotted" to receive the oil. Defendant had no other system of lighting at the reservoir than by lantern, which were the ordinary lanterns in use on its railroad, although an electric lighting system would have been feasible and inexpensive, and would have been safe in so far as any danger of setting fire to the oil or of gas generated therefrom is concerned, and the establishment of such a system of lighting would have obviated the necessity of spotting the tanks by signals given with lanterns. After the injury and death of John Woods, such a system of lighting was installed by the defendant. The contact of the oil with the atmosphere as it passes out of the reservoir into the engine tank generates gas which is highly inflammable and readily combustible when coming in contact with a flame. The lanterns in use were open flame lanterns, and are not constructed in such a way as to prevent the gas, when so generated, coming into contact with the flame. The defendant had promulgated a rule against going on or about the reservoir with lighted torches, lanterns, or lamps, and the witness Reynolds, John Woods' superior, testified that: "When I gave him (Woods) the position as boiler washer, I cautioned him about the danger of the oil, about having the lights around the oil tank, to be very careful about taking oil in any engines. I cautioned him about having lights around the oil tank, because it was a duty of mine to caution everybody." That, when he put him on the boiler washing job, "I instructed him that it was very dangerous to have lights around the boiler at any time. I told him when he was taking oil on those tanks to never carry a light on the top of the engine at all; that he could feel in the tank when the tank was full, and to shut off the oil that way, and not to use lights at all, because it was dangerous." Similar testimony was elicited from defendant's witnesses Floeck and Schultz. But, notwithstanding the testimony of these witnesses, there is evidence in the record that justified the jury in finding, and in deference to the verdict we find, that the rules before mentioned were habitually violated and abandoned, and that such habitual violation as well as the continued ignoring of the warnings before mentioned were known to and acquiesced in by defendant's agents whose duty it was to enforce the same. On the night of the 18th of July, 1909, John Woods was ordered to fill an engine tank with oil. He carried his lighted lantern with him, with which he gave signals for the proper placing of the tank, and, after the tank had been "spotted," he went upon it and adjusted the pipe or spout leading from the reservoir into the manhole, opened the valve, and started the oil to running. Before he opened the valve, however, he set his lantern on the engine tank about an arm's length from the manhole. After the oil had been flowing a few minutes, the gas generated by its contact with the atmosphere reached the flame of his lantern, and this resulted in an explosion of the gas which so burned and injured him that he died soon afterward. By his death the plaintiff suffered damages in the amount found by the verdict of the jury.

### Conclusions of Law.

[1] We conclude that the defendant was guilty of negligence in using the system of lighting it was using at the time of Woods' injury, and in not installing at its reservoir a system of electric lighting, which would have obviated the use of lanterns or other open flame lights in doing such work as the deceased John Woods was doing at the time he was injured, and that such negligence was the proximate cause of the injury and death of said John Woods.

[2] The following portion of the court's charge is complained of by defendant by its first assignment of error: "In connection with preceding instruction, if from the evidence you believe that defendant's agents had given out a rule or order and instructions, forbidding John Woods and employés similarly serving to use their lights as he was using his lantern at the time in question, but you believe that such requirement had been habitually violated and was unreasonable, as applied to the work said Woods was then performing, and that such habitual violation, if shown, was known to defendant's agents, whose duty it was to enforce same, and that they had long knowingly acquiesced in such violation, and permitted the same to be practically abandoned, then failure of said Woods to comply with this requirement would not make him contributorily negligent as matter of law, if he acted as an ordinarily prudent man in his situation would have done under the same or similar circumstances." By the first proposition under this assignment appellant contends that the giving of this charge was error because there was no evidence tending to show an habitual violation of defendant's rule or order forbidding John Woods and employés similarly serving to use lights as he was using his lantern at the time of his injury was known to defendant's agents,

whose duty it was to enforce the same. By its second proposition it contends that there was no evidence showing, or tending to show, that defendant's agents whose duty it was to enforce such rule and order had long and knowingly acquiesced in the violation thereof, and permitted the same to be practically abandoned. We think that these contentions cannot be sustained. It was shown that a light of some kind was necessary in order to place the tank at the proper spot to receive the oil. The only kind of lights furnished by defendant to John Woods and employés similarly serving for the proper performance of such service as John Woods was undertaking at the time of his injury were lanterns, such as John Woods was then using. The witness Eli Snodgrass, defendant's employé, whose regular service was coaling engines, but who was sometimes, like Woods, required to give oil to the engine tanks, and who was an eyewitness of the injury of Woods, testified that the way Woods was using the light at the time he was injured "was the way men generally used them over there. There never was any complaint from any of those bosses about the way Woods was using them that night and the way I had been using them." He further testified: "I did not think a lantern would explode it. That was my own idea about it. I didn't realize that a lantern would explode it, and up to that explosion did not know that it would do it—did not have the least idea that it would; had been doing it the same way." Further on he said that Woods needed the lantern there to give the signal to the hostler on the engines, so that the hostler could see Woods and when to stop. "It was necessary for Woods to have the lantern there in order for the hostler to see that lantern and stop." And it was necessary for him to have a lantern to do that work, to give the hostler the proper signals. He further testified that he saw Woods when he got upon the tender of the engine and when he went to the oil tank; that at the time he "must have had his lantern about an arm's length from him, setting down on the top of the tank"; and that, when he (the witness) gave oil to engines, he would set his lantern off from the manhole of the tank something near an arm's reach of him, and, when he got through, he could reach out and get it, and that he used his lantern to signal with when there was an engine in between, as on this occasion; that he would not put his lantern down close to the manhole, but it was his habit to put it within reaching distance of him; that to have put the lantern on the engine cab Woods would have had to walk away from his work; "the usual way was the way he did it." The defendant's witness Floeck, an employé of defendant and one of the superiors over Woods, testified that he saw Woods at the time of his injury go up with his lamp, saw him on the cab, said nothing to him; that, when Woods was burned by the explosion, he, the witness, was possibly 25 feet from him, standing in the gangway of the engine, and saw the explosion; that defendant had no other system of lighting than the hand lights; that it was absolutely necessary to give the signal with a light to locate the engine so as to admit of the oil; that he ordered Woods to gauge the oil in the engine tank, which was done by putting in a stick and reading the figures on it by the light of his lantern; that he, the witness, was just a few feet off, told him to gauge it, and he did; that "Woods brought the engine back and proceeded to work there in the usual way; that is, the way it was habitually done."

We think the foregoing sufficient to show that there was evidence to justify the charge complained of in the particulars specified in the first and second propositions. 20 Am. & Eng. Enc. of Law (2d Ed.) p. 106; Railway v. Scott, 71 Tex. 703, 10 S. W. 298, 10 Am. St. Rep. 804; Railway v. Leightly, 32 S. W. 800.

[3, 4] We think the third proposition under the first assignment is without merit. The court in its charge required the jury to find for waiver of the rule not only the requisite habitual disregard of it, with the knowledge and acquiescence of the defendant's agents having authority to enforce it, but also that the rule as applied would be "unreasonable." This last requirement was not essential, for if the rule had been habitually disregarded and abandoned, with the knowledge and acquiescence of those whose duty it was to enforce it, it ceased to be a rule, and the requirement that in such case the jury should find that it was unreasonable was a charge against the plaintiff, of which the defendant cannot complain.

[5] The fourth proposition has been answered by the disposition we have made of the first and second, and the fifth, which complains that the charge complained of is on the weight of the evidence, is without merit. The assignment is overruled.

[6] The following portion of the court's charge is complained of by defendant by its second assignment of error: "If, from the evidence, you believe that lights or lighting was necessary for the work at which John Woods was engaged of filling the tank with oil, and that the lighting there in use at the time was insufficient and not reasonably safe for such work, and that this was due to negligence, as above defined, of defendant's agents who were intrusted by it with authority to furnish and maintain such lighting for it, and that such negligence, if shown, was a proximate cause of the injury and death of John Woods—that is, was an efficient cause—without which such injury and death would not have happened, and from which the injuries he suffered, or some like

injuries, might reasonably have been anticipated as a natural and probable consequence, then return your verdict for the plaintiff, unless you find for the defendant under other instructions of the court." The contention is made under this assignment that it was error for the court to submit the issue to the jury as to whether from the evidence the jury believed that "lights or lighting was necessary for the work at which John Woods was engaged of filling the tank with oil and that the lighting there in use was insufficient and not reasonably safe for such work, and that this was due to negligence of defendant's agents," because, it contends, that there was no evidence showing, or tending to show, that lights were necessary for the work of filling the tank with oil, and that, this being true, it was unnecessary to submit the issue of whether the lighting there in use was reasonable and sufficient. The placing of the car in proper juxtaposition to the reservoir and spout was a part and a necessary part, in filling the engine tank, and as has been before shown the light used by the deceased was necessary for the proper placing of the car, and was furnished by defendant to him for that purpose, and was the only character of lighting provided by defendant for its employés by which to perform this service. The testimony was sufficient to raise the issue as to whether the light so furnished was reasonably sufficient and safe for the work of filling the tank, and the court did not err in submitting that issue to the jury.

[7] By a second proposition under the second assignment it is contended that it was error for the court in the part of the charge complained of to submit to the jury whether the negligence of defendant, if shown, in providing lighting which was insufficient and not reasonably safe, was the proximate cause of the injury and death of John Woods, for the reason, as it contends, the undisputed testimony shows that the alleged injury to John Woods was caused by his own voluntary act in taking a lighted lantern into a place of danger in violation of orders and instructions, when it was not necessary for him to do so, and that such voluntary act on his own part intervened between the alleged negligence of defendant and the injury, and became itself the proximate and supervening cause, without which the injury would not have occurred, thus leaving the alleged negligence of defendant remote in its relation to the injury, and not actionable in law.

The claim of broken causal connection because of contributory negligence on the part of the deceased, if it could be allowed, would have the effect of entirely abolishing the doctrine of contributory negligence in every case. The negligence of defendant was a continuing negligence, and if it resulted in the injury and death of Woods was the proximate cause thereof, and the only effect of Woods' contributory negligence would be to bar a recovery therefor under the law as it stood prior to the adoption of the act of April 13, 1909, but, since the adoption of that act, the only effect of contributory negligence of the injured party would be, not to bar a recovery, but to diminish the damages in proportion to the amount of negligence attributable to the injured employé. The assignment is overruled. Our conclusions of fact and the disposition we have made of the assignments of error above discussed necessarily dispose of appellant's third assignment, which complains of the refusal of the court to instruct the jury to return a verdict for defendant adversely to the defendant's contention, and said assignment and the several propositions thereunder are overruled.

That portion of the charge of the court complained of by the fourth assignment is not susceptible to the objection that it is on the weight of the evidence, or that it was conflicting and misleading, and the assignment and the several propositions under the same are overruled.

The sixth assignment which complains of the refusal of the court to give defendant's seventh special charge points out no reversible error. The requested charge instructed, in effect, that if John Woods, in the use of his lantern, violated the instructions theretofore given him by defendant, he could not recover, whereas the violation of such instructions by the deceased, if he was injured on that account, rendered him contributorily negligent, and under the act of April 13, 1909, such contributory negligence would not bar a recovery, but only serve to diminish the damages.

We have carefully examined the other assignments of error presented by defendant in its brief, and have concluded that none of them points out reversible error.

. We think the judgment should be affirmed, and it has been so ordered.

Affirmed.

## On Rehearing.

In response to the motion of plaintiff in error for additional findings of fact, etc., we find that after the engine tank has been properly placed or "spotted" to receive the oil through the spout, a lantern or light was no longer necessary to the successful filling of the tank, but the spout could then be adjusted to the manhole and the flow of oil started in the darkness, and that it could be ascertained when the tank had been sufficiently filled by feeling in the manhole with the hand. In other particulars, in which we are requested to find additional facts and to correct those found and stated in the opinion, the motion is overruled.

We have carefully examined plaintiff in error's motion for a rehearing, and are of the opinion that the same should be overruled, and it has been so ordered.